UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
ANDREA MORRONE,                                    :
                                                   :
                        Plaintiff,                 :
                                                   :
                v.                                 :       **ORDER**
                                                   :       21-CV-1205 (WFK) (ST)
ABRAMS, FENSTERMAN,                                :
FENSTERMAN, EISMAN, FORMATO,                       :
FERRARA, WOLF & CARRONE, LLP                       :
and SAMUEL J. FERRARA, ESQ.,                       :
                                                   :
                        Defendants.                :
------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge**:  Plaintiff Andrea Morrone
("Plaintiff") brings this action against her former attorneys Defendants Abrams, Fensterman,
Fensterman, Eisman, Formato, Ferrara, Wolf & Carrone LLP and Samuel J. Ferrara, Esq.
(together, "Defendants") for their alleged malpractice in her divorce proceedings in New York
state court.  Presently before the Court is Defendants' motion to dismiss pursuant to Fed. R. Civ.
P. 12(b)(6) and Plaintiff's cross-motion to strike the statements and exhibits attached to a
declaration submitted alongside Defendants' motion papers.  For the reasons below, Defendants'
motion is granted in part and denied in part, and Plaintiffs' motion to strike is granted.

## BACKGROUND

The following facts, taken from the Amended Complaint, are treated as true for the

purposes of this decision.

On June 10, 2011, Plaintiff signed a retainer agreement for Defendants "to represent [her]

in connection with [her] matrimonial difficulties."  Am. Compl. ("AC") ¶ 8, ECF No. 5; Retainer

Agmt., Ex. A to AC, ECF No. 5-1.  Ultimately, her difficulties resulted in a divorce action in New

York Supreme Court, Nassau County: *Iannucci v. Iannucci*, Index No. 0201340/2009.  AC ¶ 9.

During the proceedings, the state court appointed a neutral forensic expert to examine the marital

property.  *Id.* ¶ 49.  Among other findings, the court's expert deemed Plaintiff's ex-husband's

bakery to have "no value," despite it being in business for over twenty years.  *Id.* ¶ 50.  Plaintiff,

through Defendants, retained her own expert, who prepared a report which in part rebutted the court-appointed expert's valuation of the bakery. *Id.* ¶ 51.

Trial commenced from December 12, 2013 to January 22, 2016. Decision and Order After Trial dated December 12, 2016 ("Dec. 12, 2016 Decision"), Ex. D to Decl. of Adam Nicolazzo ("Nicolazzo Declaration" or "Nicolazzo Decl."), ECF No. 15-4.[1] Although Plaintiff's expert "was ready, willing and able to testify that millions of dollars were unaccounted for by" the court-appointed expert, "Defendants never put [Plaintiff's expert] on the stand." AC ¶ 51. In post-trial briefing, Plaintiff, through Defendants, made a written application for attorney's fees in the amount of $675,184.09. Dec. 12, 2016 Decision at 45–46. According to the Amended Complaint, however, the ex-husband calculated that Defendants actually "claimed $830,184.00" in attorney's fees. AC ¶ 15. Upon review of the ex-husband's calculation, Plaintiff allegedly learned that Defendants "engaged in a pattern, custom, and practice of inefficient, ineffective, and wasteful billing" to inflate their legal fees. *Id.* ¶¶ 16–17, 36–42, 44.

The state court issued its decision on December 12, 2016. *See* Dec. 12, 2016 Decision. It held in part:

> Notwithstanding the wife's claim that [the court's expert's] appraisal was undervalued and based upon assumptions and suppositions caused by the husband's failure to provide documentation, data and testimony, [Plaintiff] did not offer a rebuttal witness to substantiate her claims.

*Id.* at 25; *see also id.* at 30 ("The court notes that although the wife disputes the valuations provided by the expert, no counter-report or rebuttal testimony was offered to refute the findings of [the court-appointed expert]."). The state court thus adopted its appointed expert's valuations,

---

[1]     The parties have not filed on the docket the December 12, 2016 Decision, apparently due to N.Y. Domestic Relations Law § 235 and 22 N.Y.C.R.R. § 202.5(e). In any event, Exhibit G to Plaintiff's Complaint is a redacted excerpt of the decision, ECF No. 1-7, and Exhibit D to the Nicolazzo Declaration is the decision in full. Accordingly, the Court cites the latter.

including the bakery's zero-dollar value. *Id.* The state court also granted Plaintiff $275,000.00 in attorney's fees. *Id.* at 48.

Defendants allegedly assured Plaintiff they would appeal the December 12, 2016 Decision. AC ¶ 29. They also negotiated a "settlement of the legal fees owed" by Plaintiff, capping her bill at $100,000.00. Ltr. dated Sept. 17, 2017, Ex. F to AC, ECF No. 5-6. The agreement explained that "[a]ny additional fees [Defendants were] able to collect from [the ex-husband would] be applied against those fees [Defendants were] not collecting from" Plaintiff. *Id.* It also confirmed the parties' "discussions regarding any potential consequences that" certain actions "may have on [the parties'] arguments on appeal." *Id.* After a year, and despite billing "tens of thousands of dollars," Defendants "conceded they were not equipped to handle an appeal" and recommended Plaintiff contact an appellate attorney by the name of "G. Koopersmith." AC ¶¶ 17, 25, 28, 33–34. According to Plaintiff, however, Defendants never intended to appeal and instead "wanted to discard their client and their responsibilities." *Id.* Plaintiff declined Koopersmith's services after he allegedly priced his legal fees at $150,000.00 – $75,000.00 of which would be due upfront. *Id.* Defendants were substituted out as Plaintiff's counsel on March 27, 2018. *Id.* ¶ 14.

On April 18, 2021, Plaintiff commenced this action against Defendants, alleging five causes of action. Plaintiff asserts a legal malpractice claim arising out of Defendants' overbilling and failure to rebut the court-appointed expert. She further asserts breach of fiduciary duty, fraud, and breach of contract claims arising from the same facts as well as Defendants' "feigning" an appeal. Lastly, Plaintiff brings a cause of action for disgorgement. Defendants moved to dismiss the Amended Complaint on October 18, 2021. Notice of Mot. to Dismiss, ECF No. 14. Plaintiff then moved to strike materials presented in a declaration submitted with Defendants' opening motion papers. Cross Mot. to Strike, ECF No. 17.

## DISCUSSION

The Court first addresses Plaintiff's motion to strike and then proceeds to Defendants' motion to dismiss.

### I.    Motion to Strike

The Court need not belabor its analysis on the motion to strike because it declines to consider any material included in the Nicolazzo Declaration, except for those that were attached as exhibits to the Amended Complaint. *See Chambers v. Time Warner*, 282 F.3d 147, 152 (2d Cir. 2002). Specifically, the Court considers the parties' retainer agreement (*see* Ex. A to AC and Ex. B to Nicolazzo Decl., ECF No. 15-2) and the September 27, 2017 letter (*see* Ex. F to AC and Ex. F to Nicolazzo Decl., ECF No. 15-6), which are attached, in their entirety, to the Amended Complaint.

The Court also considers the full text of the December 12, 2016 Decision, which the Amended Complaint quotes and attaches in part. *E.g.*, AC ¶ 53; *see also supra* Footnote 1. A party partially quoting or attaching documents integral to a complaint "entitle[s] [a court] to consider the full text of those documents in ruling on [a] motion to dismiss." *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 809 (2d Cir. 1996); *McGown v. City of New York*, No. 09 Civ. 8646 (CM), 2010 WL 3911458, at *4 (S.D.N.Y. Sept. 9, 2010) (McMahon, J.) ("In deciding a motion to dismiss, [a court] may consider the full text of documents that are quoted in or attached to the complaint") (citing cases).

Because the Court declines to consider any other documents, the remainder of Plaintiff's motion to strike is granted.

## II.     Motion to Dismiss

Sitting in diversity, this Court applies the choice-of-law principles of the forum state. *AEI*

*Life LLC v. Lincoln Benefit Co.*, 892 F.3d 126, 132 (2d Cir. 2018).  The parties briefed the merits

under New York State law; their consent thus governs the choice of law analysis. *Texaco A/S*

*(Denmark) v. Com. Ins. Co. of Newark, NJ*, 160 F.3d 124, 128 (2d Cir. 1998) (quoting *Am. Fuel*

*Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)).

### A.     Legal Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court

should "draw all reasonable inferences in the Plaintiff's favor, assume all well-pleaded factual

allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."

*Wilson v. Kellogg Co.*, 628 Fed. App'x 59, 60 (2d Cir. 2016) (alterations omitted) (summary order)

(quoting *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011)).

The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d

66, 71–72 (2d Cir. 2009).  First, "threadbare recitals of the elements of a cause of action supported

by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Although "legal

conclusions can provide the framework of a complaint, they must be supported by factual

allegations." *Id.* at 679.  A plaintiff must provide facts sufficient to allow defendants to have a fair

understanding of what the plaintiff is complaining about and to know whether there is a legal basis

for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to

dismiss. *Iqbal*, 556 U.S. at 679.  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but asks

for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

**B.      Legal Malpractice**

"In order to recover damages in a legal malpractice action, a plaintiff must establish that the attorney failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession and that the attorney's breach of this duty proximately caused plaintiff to sustain actual and ascertainable damages." *Dombrowski v. Bulson*, 19 N.Y.3d 347, 350 (N.Y. 2012) (internal citations and quotation marks omitted). The Complaint alleges Defendants committed legal malpractice by (1) failing to call or submit a report from a rebuttal expert witness to support her position regarding her ex-husband's marital property, and (2) "engag[ing] in a pattern, custom and practice of inefficient, ineffective and wasteful billing to churn the case," thereby dissipating Plaintiff's "funds and marital property." AC ¶¶ 3, 54–60.

Defendants contend Plaintiff fails to state a claim because the alleged malpractice is precluded by res judicata and collateral estoppel, lacks proximate cause, and arises from unactionable strategic decisions. The Court finds Defendants' preclusion argument persuasive and dismisses the legal malpractice claim on that basis.

Defendants argue the underlying court's approval of its attorneys' fees pursuant to Domestic Relations Law ("DRL") § 237 determined an element of Plaintiff's legal malpractice

cause of action. Because that statute "empowers [state] courts to direct one spouse to pay the *reasonable* counsel fees of the other," *Strang v. Strang*, 222 A.D.2d 975, 978 (N.Y. App. Div. 3d Dep't 1995) (emphasis added), Defendants argue the state court must have determined they were not negligent – *i.e.*, that their conduct "met or exceeded ordinary and reasonable skill and knowledge commonly possessed by a member of [their] profession." Def. Mem. at 10–11, ECF No. 16; Def. Reply at 2–3, ECF No. 20. Plaintiff responds that Defendants' cited case law fails to support their proposition and that DRL § 237 "is not designed to determine if the fees are reasonable to preclude a malpractice claim." Pl. Opp. at 17, ECF No. 19.

"[A] federal court [should] look first to state preclusion law in determining the preclusive effects of a state court judgment." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380–81 (1985); *see Yeshiva Imrei Chaim Viznitz of Boro Park, Inc. v. City of New York*, 496 Fed. Appx. 122, 123 (2d Cir. 2012) ("State law determines the preclusive effect of state court judgments.") (summary order). Defendants identify two preclusion doctrines: res judicata and collateral estoppel.

Res judicata, also known as claim preclusion, denotes a valid final judgment's bar against future actions between the same parties on the same cause of action and on "all other claims arising out of the same transaction or series of transactions." *Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 347 (N.Y. 1999). Res judicata does not apply because this action is not between the same parties as those in the underlying state court action. *Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 111 (N.Y. 2021) ("Under res judicata, or claim preclusion, a valid final judgment bars future actions between the same parties on the same cause of action.").

Collateral estoppel, also known as issue preclusion, bars "a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided

against that party or those in privity, whether or not the tribunals or causes of action are the same." *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 500 (N.Y. 1984) (citations omitted). Collateral estoppel "applies if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action." *Parker*, 93 N.Y.2d 343, 349 (N.Y. 1999). "The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues in the present litigation and the prior determination, whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior action." *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 456 (N.Y. 1985).

Defendants bear their burden of showing an identity of issues – here, that the divorce court considered and decided the issue of whether they performed their legal services in a reasonable manner. In awarding fees to Defendants, the divorce court specifically expressed that it "*must* take 'into account . . . the nature, extent and *reasonableness* of the services rendered . . .' in determining the amount of the fees awarded." Ex. D at 46–47 (emphasis added) (quoting *Merrick v. Merrick*, 190 A.D.2d 515 (N.Y. App. Div. 1st Dep't 1993)). Likewise, the divorce court stated it "*must* consider . . . the time expended by counsel, the hourly rate for such services in the legal marketplace, the nature of the legal services rendered . . . and the professional standing of counsel." *Id.* The court also remarked it was "entitled to consider . . . 'the quality of the representation afforded [by] the [moving party's] attorney.'" *Id.* (quoting *Singer v. Singer*, 16 A.D.3d 666 (N.Y. App. Div. 2d Dep't 2005)). Considering these factors, the attorney's fees award was available only if "counsel's performance met or exceeded the minimal standards of professional competence—otherwise an award of fees would not have been fair and reasonable in the circumstances." *See Wyly v. Weiss*, 697 F.3d 131, 142 (2d Cir. 2012).

New York state case law further supports the idea that "[t]he determination of an appropriate legal fee encompasses and is necessarily intertwined with the question of whether the attorney seeking the compensation has negligently performed his or her duties as attorney." *In re Warsaski*, 190 Misc. 2d 553, 558 (Surr. Ct., N.Y. Cnty. 2002). In *Lefkowitz v. Schulte, Roth & Zabel*, for example, a surrogate court's "decree fixing the value of the defendant's [legal] services . . . necessarily concluded that there was no malpractice," which barred "the plaintiff's legal malpractice claims based upon the same services at issue before the [s]urrogate's [c]ourt" by virtue of collateral estoppel. 279 A.D.2d 457, 457 (N.Y. App. Div. 2d Dep't 2001). Similarly, a state court's award of attorney's fees in a personal injury action "necessarily decided that there was no legal malpractice," precluding the client's subsequent legal malpractice suit. *Siegel v. Werner & Zaroff, P.C.*, 270 A.D.2d 119, 120 (N.Y. App. Div. 1st Dep't 2000). And pursuant to a corollary doctrine, "[a]n attorney is not entitled to recover legal fees for services rendered to a client . . . where the legal services were performed in a negligent manner." *See* 7 N.Y. Jur. 2d Attorneys at Law § 276 (citing *Martin v. Yohay*, 149 A.D.2d 477, 480 (N.Y. App. Div. 2d Dep't 1989)). Defendants have therefore bore their burden on the first prong of the collateral estoppel analysis.

Plaintiff does not address the question of whether she had a full and fair opportunity to litigate the issue despite having the burden. *See* Pl. Opp. at 16–19; *see, e.g.*, *Kaufman*, 65 N.Y.2d at 456; *Moore v. Kronick*, 187 A.D.3d 892, 892 (N.Y. App. Div. 2d Dep't 2020). Defendants' motion to dismiss the legal malpractice claim on the basis of collateral estoppel is thus granted.

## B.   Duplicative Claims

Defendants claim the remainder of Plaintiff's causes to action are duplicative of her legal malpractice claim. Def. Mem. at 15–17. Under New York law, "[t]wo claims are duplicative of

one another if they 'arise from the same facts . . . and do not allege distinct damages.'" *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (ellipses in original) (quoting *Sitar v. Sitar*, 50 A.D.3d 667, 670 (N.Y. App. Div. 2d Dep't 2008)).  Plaintiff's legal malpractice claim allegedly arose from Defendants' failure "to call [their expert] as a witness at trial and overbill[ing] Plaintiff with 'fraudulent bills.'"  Def. Mem. at 15–17 (internal quotation marks in original).  It is true Plaintiff premises her other claims on those facts, and, if that were the only factual basis for the other claims, they would be duplicative.  *E.g.*, *RocketFuel Blockchain Co. v. Ellenoff Grossman & Schole LLP*, No. 21-CV-1764 (VEC), 2022 WL 80482, at *7 (S.D.N.Y. Jan. 7, 2022) (Caproni, J.) (finding breach of contract and breach of fiduciary duty claims duplicative where plaintiff "alleges exactly the same conduct as it does in its legal malpractice claim"); *Postiglione v. Castro*, 119 A.D.3d 920, 922 (N.Y. App. Div. 2d Dep't 2014) ("As a general rule, where a cause of action alleging breach of contract or fraud arises from the same facts as a legal malpractice cause of action and does not allege distinct damages, the breach of contract or fraud cause of action must be dismissed as duplicative of the legal malpractice cause of action.").  But Plaintiff also includes facts not alleged in her legal malpractice claim: namely, Defendants' promises to pursue an appeal.  AC ¶¶ 65–66 (breach of fiduciary duty); *id.* ¶ 69 (fraud); *id.* ¶ 81 (breach of contract).  Given that her legal malpractice allegations make no mention of those promises, *see* AC ¶¶ 54–60, the other causes of action are not entirely duplicative and cannot be dismissed.  *E.g.*, *Kurman v. Schnapp*, 73 A.D.3d 435, 435–36 (N.Y. App. Div. 1st Dep't 2010) ("Plaintiff's breach of fiduciary duty cause of action is not duplicative of his legal malpractice cause of action, since it is premised on separate facts that support a different theory.").  Defendants' motion is thus denied on this ground.

## C. Breach of Fiduciary Duty

In Plaintiff's words, "the breach of fiduciary duty [claim] is based on Defendants' concealment of their malpractice," in breach of their duty to "disclose their own acts of malpractice to their clients." Pl. Opp. at 20–21. Under New York law, however, Defendants' failure to disclose alleged legal malpractice—here, their failure to inform Plaintiff that they did not rebut the court-appointed expert and that they falsely billed her—"does not give rise to a separate action for breach of fiduciary duty." *Genesis Merch. Partners, LP v. Gilbride, Tusa, Last & Spellane LLC*, 149 A.D.3d 469, 469 (N.Y. App. Div. 1st Dep't 2017).

Plaintiff further alleges Defendants breached their fiduciary duty to Plaintiff by "feigning" their pursuit of an appeal and charging fees for work to that end. AC ¶¶ 65–66; Pl. Opp. at 21 (Defendants "continued their charade by misleading Plaintiff into believing they would valiantly appeal the court's 'wrong' decision when in fact they could not appeal . . . [and] never filed a brief"). "[I]ndividuals in positions of trust, such as attorneys . . . are subject to liability for breach of fiduciary duty when they deceive or defraud their clients." *Nguyen v. FXCM Inc.*, 364 F. Supp. 3d 227, 243 (S.D.N.Y. 2019) (Crotty, J.) (quoting *Bullmore v. Banc of Am. Sec. LLC*, 485 F. Supp. 2d 464, 471 (S.D.N.Y. 2007)); *see Citibank, N.A. v. Battle*, 259 A.D.2d 406, 406–07 (N.Y. App. Div. 1st Dep't 1999). Plaintiff's breach of fiduciary duty claim fits under that theory, in that Defendants allegedly "churned fees as if they were filing an appeal" despite their intention "to discard their client and their [appellate] responsibilities." AC ¶¶ 33–34. Such alleged conduct reflects deception.

Defendants maintain they "cannot be the proximate cause for any purported loss of the ability to appeal." Def. Mem. at 19. The damages arising from the breach of fiduciary duty, however, come not from a lost opportunity to appeal but from Defendants' charges for their

11

allegedly insincere appellate work.  AC ¶ 66.  Accordingly, Defendants' motion to dismiss the breach of fiduciary duty claim is denied.

### D.    Fraud

Plaintiff's fraud claim, like her breach of fiduciary duty claim, is partially premised upon Defendants' concealment of their alleged malpractice through a failure to rebut the court-appointed expert and overbilling.  Such allegations also fail to state a claim for fraud.  "A fraud claim asserted within the context of a legal malpractice claim 'is sustainable only to the extent that it is premised upon one or more affirmative, intentional misrepresentations—that is, something more egregious than mere concealment or failure to disclose one's own malpractice.'" *Kaiser v. Van Houten*, 12 A.D.3d 1012, 1014 (N.Y. App. Div. 3d Dep't 2004) (quoting *White of Lake George v. Bell*, 251 A.D.2d 777, 778 (N.Y. App. Div. 3d Dep't 1998)).

Plaintiff also alleges Defendants defrauded her when they induced her to sign the September 27, 2017 letter, intending her to "agree to pay them $100,000 under the belief they were representing her interests for an appeal."  AC ¶¶ 69, 71.  Specifically, Plaintiff points to the "material promises [] expressly stated in the Defendants' [September 27, 2017] letter" that they would continue to pursue legal fees from Plaintiff's ex-husband and that they were pursuing a pending appeal.  Pl. Opp. at 22 (citing AC ¶¶ 44–48).  There are two problems with Plaintiff's theory.  First, nothing in the letter can be construed as a promise to act.  *See* Ex. F to AC.  Second, "[u]nder New York law, 'one may not make as the basis for a fraud claim a representation in a contract that is later breached.'" *Luv N' Care, Ltd. v. Shiboleth LLP*, No. 16-CV-3179 (AJN), 2017 WL 3671039, at *10 (S.D.N.Y. Aug. 8, 2017) (Nathan, J.) (quoting *TIAA Global Investments, LLC v. One Astoria Square LLC*, 127 A.D.3d 75 (N.Y. App. Div. 1st Dep't 2015)).  Because Plaintiff's fraud claim is duplicative of its breach of contract claim it must thus be dismissed.

### E.      Disgorgement

Defendants argue disgorgement "may not stand as an independent cause of action." Def.

Mem. at 21–22.   Yet several New York State court decisions describe, in actions concerning

attorney's fees, disgorgement as an independent cause of action. *E.g.*, *Rock City Sound, Inc. v.*

*Bashian & Farber, LLP*, 74 A.D.3d 1168, 1172 (N.Y. App. Div. 2d Dep't 2010) (plaintiff "was

the defendants' client at all times relevant to the instant lawsuit, and therefore had standing to bring

this cause of action" for "disgorgement of an attorney's fee"), *abrogated on other grounds by*

*Dupree v. Voorhees*, 102 A.D.3d 912 (N.Y. App. Div. 2d Dep't 2013).

Even where disgorgement is not a proper cause of action, dismissal on that basis does not

preclude Plaintiff from obtaining that equitable remedy. *E.g.*, *Stavroulakis v. Pelakanos*, 58 Misc.

3d 1221(A), at *7 n.19 (N.Y. Sup. Ct., N.Y. Cnty. 2018) (dismissing disgorgement cause of action

"without prejudice to plaintiff seeking the remedy of disgorgement"); *see also Piccarreto v. Mura*,

41 Misc. 3d 295, 318 (N.Y. Sup. Ct., Monroe Cnty. 2013) (citing cases reflecting that

"[d]isgorgement has also been utilized to remedy breach of contract or fiduciary duty claims"

against an attorney).

### F.      Breach of Contract

Plaintiff premises her breach of contract claim on Defendants' failure to represent her in

"all proceedings," including appeals, as promised in the retainer agreement and in their September

17, 2017 letter.   Pl. Opp. at 8, 25–26.   While Plaintiff quotes and emphasizes the phrases "all

proceedings" and "for all purposes" in her Amended Complaint and Opposition Memorandum,

they do not appear in the retainer agreement or the September 17, 2017 letter.   Nevertheless, the

retainer agreement states the parties agreed Defendants would "represent [Plaintiff] in connection

with [Plaintiff's] matrimonial difficulties" and does not expressly exclude appeals. *See* Ex. A to

AC. The September 27, 2017 letter, signed by Plaintiff, required her to acknowledge the parties' "discussions regarding any potential consequences" certain actions "may have on our arguments on appeal of" the December 12, 2016 Decision. Ex. F to AC. The reasonable inference, as the Court must make in Plaintiff's favor on this motion to dismiss, is that, prior to September 27, 2017, Defendants agreed to pursue, were pursuing, and charged Plaintiff fees as if they were pursuing an appeal on Plaintiff's behalf. *See also* AC ¶ 25 (listing fees charged for drafting and filing a Notice of Appeal).

"A cause of action to recover damages for breach of contract may be maintained against an attorney where there is a promise to perform and no subsequent performance." *Reidy v. Martin*, 77 A.D.3d 903, 903 (N.Y. App. Div. 2d Dep't 2010); *e.g.*, *Vogel v. Lyman*, 246 A.D.2d 422, 423 (N.Y. App. Div. 1st Dep't 1998) (defendants' "failure to renew [a mechanic's lien claim] and/or failure to properly file a lis pendens . . . sufficiently state[d] a cause of action for breach of contract"). In *Reidy*, for example, the plaintiff properly pleaded a breach of contract claim where "he alleged that he paid [his attorney] . . . to make motions to vacate pleas . . . , and that [his attorney] failed to do so." 77 A.D.3d at 903. Here, Plaintiff's allegations parallel those in *Reidy*: Defendants allegedly breached the retainer agreement's promise to represent her in her matrimonial difficulties when they billed Plaintiff for appellate work "knowing they would not file an appeal" and did not in fact do so. AC ¶¶ 25, 29, 33, 34, 81–82.

Defendants cite cases suggesting, under New York law, "a breach of contract claim against an attorney upon a retainer agreement may only be sustained where the attorney makes an express promise in the agreement to obtain a specific result." Def. Mem. at 22 (internal quotation marks omitted). In *Santulli v. Englert, Reilly & McHugh, P.C.*, however, the New York Court of Appeals instructed that to the extent precedent "can be read to support the proposition that an express

promise to obtain a specific result is required to sustain a contract cause of action in the context of an attorney-client relationship, it should not be followed." 78 N.Y.2d 700, 706 (N.Y 1992). Defendant's claim must thus be rejected.

Defendant's motion to dismiss Plaintiff's breach of contract claim is denied.

## CONCLUSION

For the reasons stated above, Plaintiff's motion to strike is granted because the Court need only consider the materials attached as exhibits to the Amended Complaint. Defendants' motion to dismiss is granted in part and denied in part. Plaintiff's legal malpractice claim is dismissed pursuant to the doctrine of collateral estoppel. Plaintiff's breach of fiduciary duty and breach of contract claims survive because as they are not duplicative of the legal malpractice claim and the allegations concerning Defendants' "feigning" an appeal plausibly state claims. Plaintiff's fraud claim is dismissed because it fails to state a claim. Finally, Plaintiff is not precluded from obtaining the equitable remedy of disgorgement.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: August 15, 2022
       Brooklyn, New York